VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.     23-AP-370

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant.  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

AUGUST TERM,   2024

Kristian Jerry\* v. Chad Merchant, Jr.
}   APPEALED FROM:
}   Superior Court, Grand Isle Unit,
}   Family Division
}   CASE NO. 23-DM-00064
Trial Judge: Samuel Hoar, Jr.

In the above-entitled cause, the Clerk will enter:

Mother appeals from the trial court's parentage order.  She contends that the court failed to adequately address domestic violence concerns under 15 V.S.A. § 665a in awarding father parent-child contact (PCC).  We affirm.

The record indicates the following.  Mother and father are the parents of a son, born in May 2020.  Mother initiated this parentage action in January 2023.  At an October 2023 hearing, mother testified to various acts of physical and emotional abuse perpetrated against her by father, including in son's presence.  These included allegedly hitting her across the face when she was breastfeeding son and punching her with a closed fist on her back and the back of her neck while she was holding son or when son was nearby.  Mother testified that she was scared of father and feared that he would kill her.  Father pled guilty to simple assault against mother based on a punching incident in February 2021 and he was placed on probation.  As part of that criminal proceeding, father continued to see a counselor who he had been seeing previously.  Mother testified that father was also criminally charged for shooting her with a BB gun.

Mother found alternate housing with son in February 2021 and allowed father to have supervised contact.  She stated that father hit son in the head during one visit.  She also testified that father called son names.  Mother testified that she asked father to leave during a visit in August 2022 and father engaged in name-calling toward her, including calling her a whore, bitch, and a liar, in front of son.  She stated that father also threw a toy car at her, which left a bruise, and "started to dart at" her.  She picked up a hammer and father eventually left.  Father then started calling and texting mother repetitively the following morning and threatened to kill her.  A recording of his threat was played at the hearing.  Mother testified to other incidents as well, including father strangling her, breaking her nose, and kicking her, as well as making numerous threats to kill her.

Mother expressed concern at the hearing about son's safety if father was granted unsupervised contact.  Mother stated that she had obtained a no-trespassing order against father.

She pointed to an anger-related incident that had occurred between father and his sister just prior to the October 2023 hearing. Mother sought supervised visitation and an order requiring father to complete anger-management or domestic-violence programming prior to allowing unsupervised PCC. Father argued that counseling was unnecessary because he had engaged in counseling in connection with his simple-assault conviction and he had been successfully discharged from probation. He sought unsupervised contact as it would allow him more contact with son.

At the close of the hearing, the court made findings on the record. It awarded primary parental rights and responsibilities (PRR) to mother, which the parties agreed was appropriate. The court found that "there was a level of domestic violence between the parents." It did not make any specific findings on what occurred because it stated that the violence stopped when the parties ended their relationship a year earlier and "there has been no violence since then." The court did not find that son had been abused. Even if son had been abused, however, the court found that the alleged abuse occurred a year earlier and father had engaged in supervised visitation since that time, which had gone well. The court credited the testimony of father's girlfriend that father had not acted violently toward her or her child since they had been together. It found insufficient evidence to warrant continued supervised visitation or to require father to engage in counseling. The court found it in son's best interest to have robust and meaningful contact with both parents. It awarded father weekend-long visitation, the length of which increased over time. It maintained the confidentiality of mother's address and directed that PCC transfers occur at a particular public location. This appeal followed.

Mother argues on appeal that the court failed to adequately consider father's history of abusive behavior and failed to ensure that adequate measures were taken to protect her safety and son's safety. She cites § 665a and asserts that the court must ensure that "adequate provision can be made for the safety of the child and the parent who is a victim of domestic violence." 15 V.S.A. § 665a(a). Mother contends that father did not reform his behavior in the year leading up to the hearing, he simply was deprived of the opportunity to abuse her or the parties' son.

There was no error in the court's decision. Section 665a(a) provides that:

> If within the prior ten years, one of the parents has been convicted of domestic assault or aggravated domestic assault against the other parent, or has been found to have committed abuse against a family or household member, as defined in section 1101 of this title, <u>the court may award parent-child contact to that parent if the court finds that adequate provision can be made for the safety of the child and the parent who is a victim of domestic violence</u>.

(Emphasis added.)

The statute then identifies options that a court "may" choose to ensure the safety of parents and children in a PCC order. See <u>id</u>. § 665a(b)-(c). These include, among other things, having exchanges "occur in a protected setting," requiring supervised PCC, imposing a counseling requirement, prohibiting overnight PCC, ordering that a parent's address remain confidential, and "any other condition that is deemed necessary or appropriate to provide for the safety of the child, the victim of domestic violence, or another family or household member." <u>Id</u>.

In this case, the court found that father had abused mother. It assumed arguendo that father had also abused son. The abuse occurred within the prior ten years. The court therefore

2

was required under § 665a to "find[] that adequate provision c[ould] be made for the safety" of mother and son before it could award PCC to father. The court was mindful of this obligation. It determined that supervised PCC was no longer necessary given the passage of time since the last act of abuse and the fact that supervised contact had gone well during the prior year. It credited testimony that father was not acting violently toward his current girlfriend or her child. As part of its order, the court maintained the confidentiality of mother's address, one of the protective options available in § 665a, and required that PCC transfers occur at a public location. The court was not required to impose other requirements if it deemed those options unnecessary. As set forth above, the statute provides the court discretion to determine what is needed to ensure the safety of a parent and child as part of a PCC order. The court exercised that discretion here and determined that PCC could safely occur with minimal restrictions. While mother disagrees with the court's conclusion, "it is the exclusive role of the trial court to assess the credibility of witnesses and weigh the evidence" and "we do not reweigh the evidence on appeal." Peralta v. Brannan, 2020 VT 100, ¶ 21, 213 Vt. 493. There was no error.

Affirmed.

BY THE COURT:

Harold E. Eaton, Jr., Associate Justice

William D. Cohen, Associate Justice

Nancy J. Waples, Associate Justice

3